## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| JEAN BELASCO, | CASE NO. 1:14-CV-01778 |
|     Plaintiff, | |
| v. | MAGISTRATE JUDGE VECCHIARELLI |
| CAROLYN W. COLVIN,<br>    Acting Commissioner of Social<br>    Security, | **MEMORANDUM OPINION AND ORDER** |
|     Defendant. | |

Plaintiff, Jean Lynn Belasco ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

### I.    PROCEDURAL HISTORY

On January 18, 2013, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of May 30, 2010.  (Transcript ("Tr.") 10.)  The claims were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.*)  On April 17, 2014, an ALJ held Plaintiff's hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id.*)  On May 5, 2014, the ALJ

found Plaintiff not disabled.  (Tr. 7.)  On July 11, 2014, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On August 14, 2014, Plaintiff filed her complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 15, 17.)

Plaintiff asserts the following assignment of error: (1) The ALJ erred in evaluating the opinion of Plaintiff's treating physician, Dr. Hochman; and (2) the ALJ erred in failing to assign any weight to the July 2011 functional capacity assessment completed by Plaintiff's physical therapist, Mr. Walsh.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in December 1963 and was 46-years-old on the alleged disability onset date.  (Tr. 19.)  She had at least a high school education and was able to communicate in English.  (*Id.*)  She had past relevant work as a licensed practical nurse.  (*Id.*)

### B. Medical Evidence[1]

#### 1. Medical Reports

---

[1] The ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease, diabetes mellitus, diabetic retinopathy, affective disorder (depressive disorder/bipolar disorder), anxiety disorder (panic disorder without agoraphobia) and substance addiction disorder (alcohol). (Tr. 12.)  Plaintiff's challenges to the ALJ's decision concern only physical impairments; therefore, the Court will limit its summary of Plaintiff's medical records to evidence relating to her physical impairments.

Internal medicine physician Todd S. Hochman, M.D., evaluated Plaintiff on February 17, 2011. (Tr. 878.) He reported that, in November 1995, Plaintiff was working as a nurse and sustained a low back injury while transferring a patient. (*Id.*) Dr. Hochman indicated that Plaintiff was treated conservatively with physical therapy but remained symptomatic, and that a lumbar MRI revealed an L4-5 disc herniation. (*Id.*) Plaintiff had problems with addiction to medication and was presenting with low back pain radiating into the left leg. (*Id.*) She reported that her pain had been ongoing since 1995 and that she had no intervening low back injuries. (*Id.*) A physical examination revealed some tenderness, and pain with left-side straight leg raising. (Tr. 879.) Plaintiff had limited range of motion and decreased but symmetric reflexes. (*Id.*) Dr. Hochman held off prescribing analgesic medication in light of Plaintiff's history but prescribed Topamax, physical therapy, an updated MRI, and a pain management consultation with David A. Ryan, M.D. (*Id.*) An MRI the following month revealed broad-based central disc herniation at L4-5 and a left central disc herniation at L5-S1. (Tr. 880.) Plaintiff's foramen were normal and there was no thecal sac stenosis. (Tr. 880.)

Plaintiff participated in physical therapy at MetroHealth between March and April 2011 for treatment of her back and leg symptoms. (Tr. 369-373, 378-401, 407-428.) On March 11, 2011, Jan Hornack, PT, reported that Plaintiff had not undergone any recent treatment or used a TENS unit she had at home. (Tr. 369.) Plaintiff had used a back brace in the past. (*Id.*) Plaintiff was independent with self care but had difficulty with cooking, lifting, and carrying. (*Id.*) She reported back pain "burning down left leg" at level 7/10. (Tr. 370.) Ms. Hornack reported that Plaintiff was not in acute distress and rose from her chair in the waiting room easily. (*Id.*) Plaintiff's range of motion was within

3

normal limits in all planes and her strength was intact in her bilateral legs except for 4/5 strength in her left glute. (Tr. 370-371.) Plaintiff's sensation was intact and straight leg raise testing was negative. (Tr. 371.) Her gait was independent without any assistive device but was slow. (*Id.*) Ms. Hornack noted that Plaintiff had "gotten away from doing exercises," but retained good range of motion and gross lower extremity strength. (Tr. 371-372.) Ms. Hornack prescribed 18 physical therapy visits and recommended investigating using a TENS unit for pain control. (Tr. 372.)

On March 31, 2011, Dr. Hochman noted that Plaintiff was undergoing physical therapy that would likely be followed by work condition and a post-condition functional capacity examination. (Tr. 876.) Per Ms. Hornack's recommendation, Dr. Hochman prescribed a new TENS unit. (*Id.*) Plaintiff complained of discomfort with straight leg raising and exhibited decreased sensation in her feet. (*Id.*)

On April 15, 2011, Plaintiff saw Bobby Golbaba, M.D., upon referral from Dr. Hochman. (Tr. 402.) Plaintiff complained of lumbar back pain that had been ongoing for 15 years, and reported that past treatments produced moderate relief for transient periods. (*Id.*) On examination, Plaintiff had only mild pain with range of motion exercises, and a normal neurologic examination. (Tr. 403.) Her reflexes, senses, and motor strength were intact in her bilateral upper and lower extremities. (*Id.*) David A. Ryan, M.D., recommended performing diagnostic medial nerve branch blocks. (Tr. 405.)

A work conditioning evaluation from May 4, 2011, revealed that Plaintiff had been diagnosed with lumbar sprain with disc herniation and found decreased range of motion, decreased strength, tender points, decreased functional skills, complaints of pain, and decreased fitness affecting her ability to work. (Tr. 432.)

4

Per Dr. Hochman's request, physical therapist Tim Walsh, PT, DPT, CWCE, conducted a functional capacity evaluation on July 5, 2011. (Tr. 1161-1179.) Mr. Walsh concluded that Plaintiff demonstrated the ability to lift "within the lower end of the Medium Lifting Category" of 20-50 pounds occasionally and 10-25 pounds frequently with up to 10 pounds constantly. (Tr. 1163.) Plaintiff was able to frequently walk, reach, handle, and finger and could occasionally stoop, crouch, kneel, crawl, balance, and climb. (Tr. 1164-1165.) She was observed sitting for one hour with some discomfort at the end of the hour, performed static standing for 10 minutes and dynamic standing for 45 minutes, and continuously walked for 15 minutes. (Tr. 1166.) Plaintiff had normal grip strength bilaterally, normal posture and strength, and a normal range of motion apart from moderate pain with left-sided motion in her trunk. (Tr. 1168.) Plaintiff demonstrated inconsistent reliability of pain and disability reporting based on the testing compared to pain questionnaires. (Tr. 1172.) Mr. Walsh concluded that Plaintiff would be unable to perform the demands of her past work as a licensed practical nurse, but possessed physical abilities that might be compatible with other employment. (Tr. 1177.)

At discharge from physical therapy and work condition, Plaintiff's occupational therapist reported that Plaintiff was able to tolerate lifting and carrying 22.5 pounds and had pushing/pulling abilities of 20 to 30 pounds. (Tr. 471.) The therapist reported that Plaintiff had made slow progress and benefitted from using TENS units, hot packs, and ice. (*Id.*) She noted that Plaintiff was to participate in the July 2011 functional capacity evaluation to determine specific work tolerances to be used during her job search. (*Id.*)

In August 2011, Dr. Hochman noted that Plaintiff would not be able to return to her previous position as a nurse or home health aide due to the high level of physical demand

required. (Tr. 873.)

Plaintiff underwent a bilateral L3, L4, and L5 branch block on September 29, 2011. (Tr. 477.) On October 25, 2011, she reported to David A. Ryan, M.D., that the branch block had initially nearly completely resolved her pain and she was able to go shopping and walk without any pain. (Tr. 479.) Dr. Ryan noted that "the pain slowly returned but was more than 50% for the first weeks and is still improved." (*Id.*) He recommended exploring an L3 to L5 medial branch radiofrequency ablation (RFA) procedure for potential longer-term relief. (Tr. 480.)

In October 2011, Dr. Hochman noted that Plaintiff was about to begin a job search but was "currently having some difficulty with 8 hours per day, 5 days per week." (Tr. 872.) Plaintiff's lumbar extension had improved and pain was decreased, but she still had some low back discomfort with left straight leg raising, some tenderness, and some pain with a Patrick's maneuver. (*Id.*)

In March 2012, Dr. Hochman noted that Plaintiff had responded to Dr. Ryan's injections and had last seen Dr. Ryan in October 2011. (Tr. 870.) Dr. Hochman reported that Plaintiff's RFA procedures had been approved and that Plaintiff had secured employment at a position that accommodated her restrictions. (*Id.*) Plaintiff had mild discomfort with straight leg raising. (*Id.*)

In June 2012, Dr. Hochman noted that Plaintiff's return to work "did not last" and that she was again searching for employment within her restrictions. (Tr. 869.) Plaintiff had some shaking in her legs with pain on lumbar extension and "tightness" with straight leg raising. (*Id.*)

Plaintiff underwent L3 to L5 medial branch RFA procedures in August and

6

September 2012.  (Tr. 482-487.)  On October 8, 2012, Dr. Hochman reported that Plaintiff had only minimal discomfort to the left of the midline and had less pain with lumbar extension.  (Tr. 867.)  She still complained of pain with straight leg raise testing.  (*Id.*)  Dr. Hochman recommended a follow up appointment in three months.  (*Id.*)

On October 13, 2012, Plaintiff reported to Dr. Ryan that her pain was gradually improving and that her radicular leg pain was gone.  (Tr. 488.)  Dr. Ryan reported that Plaintiff had normal strength and reflexes in all extremities but some tenderness to palpation over her paraspinal muscles.  (Tr. 489.)  He concluded that Plaintiff had exhibited "relatively good results" from her procedures.  (Tr. 490.)  Dr. Ryan noted that Plaintiff "clearly does not have pain at the facet level anymore and recognizes that she is pain-free on the right side" and counseled Plaintiff about substance addiction.  (Tr. 490-491.)

In November 2012, Plaintiff's pain continued to gradually improve and became intermittent.  (Tr. 493.)  It worsened with standing and movement.  (*Id.*)  Plaintiff had no tenderness to palpations and full strength, intact reflexes, intact senses, normal gait, and no clonus and a negative Patrick's sign.  (*Id.*)

At Plaintiff's next appointment in February 2013, Dr. Hochman reported that Plaintiff had less pain with straight leg raising but still some discomfort with extension.  (Tr. 866.)  He noted that Dr. Ryan's treatment had provided some relief.  (*Id.*)

On April 16, 2013, Angel Martino, one of Plaintiff's counselors, completed a "Daily Activities Questionnaire."  (Tr. 908-909.)  In relevant part, Ms. Martino reported that Plaintiff was living in her own home that was in foreclosure.  (Tr. 908.)  She could prepare easy meals but had difficulty standing for long periods.  (Tr. 909.)  Plaintiff could perform household chores slowly with rest breaks, shower daily, and shop with assistance.  (*Id.*)

She was unable to drive due to a DUI but was compliant with keeping appointments. (Tr. 909.)

In June 2013, Dr. Hochman reported that Plaintiff's pain was recurring and that she had increased tenderness and pain with range of motion and more tightness with straight leg raising. (Tr. 1115.) In October 2013, he reported that Plaintiff had obtained a part-time job but was having difficulty maintaining work. (Tr. 1114.) He noted that Plaintiff had applied for disability based on psychological issues, but that she had been denied benefits. (*Id.*) Dr. Hochman suggested that Plaintiff re-enter vocational rehabilitation. (*Id.*)

In December 2013, Dr. Hochman completed a physical capacity questionnaire. (Tr. 1075-1076.) He indicated that Plaintiff remained able to lift 25 pounds occasionally and 10 pounds frequently; stand for four hours in an eight-hour day for 15-30 minutes at a time; and sit for six hours in an eight-hour workday for 15-30 minutes at a time. (Tr. 1075.) She could rarely climb, balance, and crawl; occasionally stoop, crouch, kneel, reach, push, and pull; and frequently perform fine and gross manipulation. (Tr. 1075-1076.) Plaintiff had no environmental limitations, and Dr. Hochman indicated that she had been prescribed a cane, brace, and TENS unit. (Tr. 1076.) He indicated that Plaintiff would need to alternate positions at will and experienced moderate pain. (*Id.*) Dr. Hochman opined that Plaintiff would not need to elevate her legs and would not require unscheduled breaks. (*Id.*) As supporting medical findings, he cited Plaintiff's L4-5 disc herniation. (Tr. 1075-1076.)

Dr. Ryan examined Plaintiff in January 2014. (Tr. 1140-1142.) Plaintiff reported that she continued to have pain on her left side. (Tr. 1140.) She noted that sleeping on a mattress on the floor and walking up stairs were helpful. (*Id.*) Dr. Ryan noted that Plaintiff

8

applied for "permanent total disability based on psychological allowances."  (*Id.*)  Plaintiff had tenderness and a positive Patrick's sign at her sacroiliac (SI) joint, but straight leg raise testing was negative bilaterally and she had intact and symmetric reflexes and intact strength.  (Tr. 1141.)  Dr. Ryan opined that Plaintiff described radicular symptoms "[t]o some extent" but that her dominant problem was her SI joint.  (*Id.*)

### 2. Agency Reports

On April 12, 2013, state agency physician Gerald Klyop, M.D., reviewed the record for the state disability determination service.  (Tr. 86-87.)  Dr. Klyop opined that Plaintiff remained capable of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently.  (Tr. 86.)  He indicated that could stand and/or walk for a total of six hours in an eight-hour workday, and sit, with normal breaks, for a total of six hours in an eight-hour workday.  (*Id.*)  Dr. Klyop further opined that Plaintiff could frequently balance, stoop, kneel, and crouch; occasionally crawl and climb ramps and stairs; and never climb ladders, ropes, or scaffolds.  (Tr. 86-87.)  Dr. Klyop opined that Plaintiff was not otherwise limited.  (Tr. 87.)

Rachel Rosenfeld, M.D., reviewed the record on July 4, 2013.  (Tr. 122-123.)  Dr. Rosenfeld's assessment was identical to Dr. Klyop's, except that she concluded that Plaintiff would be able to frequently climb ramps and stairs and frequently crawl.  (Tr. 122-123.)

### C. Hearing Testimony

#### 1. Plaintiff's Hearing Testimony

Plaintiff testified that she lived with her daughter and two grandchildren in her daughter's home.  (Tr. 36.)  Plaintiff did light housekeeping and cooked on occasion.  (*Id.*)

9

She did her own laundry and went grocery shopping with her daughter.  (*Id.*)  Plaintiff testified that she stopped driving because she would "start to go somewhere and turn around and have to come back home because of anxiety," and because her license was suspended after an OVI conviction.  (Tr. 37.)  Plaintiff testified that she kept in contact with her mother, sisters, and friends.  (Tr. 38.)  She attended AA meetings twice a week.  (*Id.*)  She testified that she had been sober since October 2012.  (Tr. 39.)

Plaintiff testified that the biggest problem she faced that kept her from working was that her "brain doesn't work the way it did."  (Tr. 47.)  Upon questioning by the ALJ, Plaintiff clarified that she believed it was a "mental type of issue" that kept her from working.  (*Id.*)  Plaintiff further testified that she had back pain, which was being treated with physical therapy, occupational therapy, and injections.  (Tr. 48.)  She stated that her back pain radiated down into her left ankle.  (Tr. 50.)

### 2. Vocational Expert's Hearing Testimony

Kathleen Rice, a vocational expert, testified at Plaintiff's hearing.  The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and past work experience.  (Tr. 64.)  The individual could occasionally lift 20 pounds and frequently lift ten pounds; stand and walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; have an unlimited ability to push and pull other than shown for lift and/or carry; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and frequently balance.  (Tr. 64.)  The individual could perform simple, routine tasks consistent with unskilled work; relate to coworkers, supervisors, and the general public on a superficial level, meaning of a short duration for a specific purpose; perform work with occasional changes in routine; and adapt to a setting where there would be no demands

for a fast pace.  (*Id.*)  The individual could perform low stress work meaning no arbitration, negotiation, or responsibility for the safety of others or supervisory responsibility.  (Tr. 65.)  The VE testified that the hypothetical individual could perform such jobs as a cashier II, housekeeping cleaner, and a merchandise marker.  (*Id.*)

### III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot,* 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.

11

20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since May 30, 2010, the alleged onset date.

3. The claimant has the following severe impairments: lumbar degenerative disc disease, diabetes mellitus, diabetic retinopathy, affective disorder (depressive disorder/bipolar disorder), anxiety disorder (panic disorder without agoraphobia) and substance addiction disorder (alcohol).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), meaning she can occasionally lift 20 pounds and frequently lift 10 pounds, is able to stand and walk for 6 hours of an 8-hour workday, and is able to sit for 6 hours of an 8-hour workday. She has unlimited ability to push and pull other than shown for lift and/or carry. Additional limits include occasionally climbing ramps and stairs, but never climbing ladders, ropes, and scaffolds. The claimant can frequently balance. The claimant can perform simple routine tasks consistent with unskilled work; can relate to co-workers, supervisors, and the general public on a superficial level (meaning of a short duration for a specific purpose); with occasional changes in routine; can adapt to a setting where there

        are no demands for a fast pace; can perform low stress work meaning no arbitration, negotiation, responsibility for the safety of others or supervisory responsibility.

6.     The claimant is unable to perform any past relevant work.

7.     The claimant was born in December 1963 and was 46-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age.

8.     The claimant has at least a high school education and is able to communicate in English.

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.    The claimant has not been under a disability, as defined in the Act, from May 30, 2010, through the date of this decision.

(Tr. 12-20.)

### V.   LAW & ANALYSIS

#### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless

of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

    **B.**    **Plaintiff's Assignments of Error**

          **1.**    **The ALJ Erred in Evaluating the Opinion of Plaintiff's Treating Physician.**

Plaintiff argues that the ALJ erred in evaluating Dr. Hochman's December 2013 medical source statement regarding Plaintiff's physical capacity. (Tr. 1075-1076.) The ALJ addressed Dr. Hochman's opinion and gave it "some weight," explaining: "This opinion is given some weight but the limits as to standing and walking are not supported by the medical evidence of record. The claimant was prescribed a back brace, but there is little, if any mention of use of a cane." (Tr. 17.) According to Plaintiff, the ALJ erred in evaluating Dr. Hochman's opinion, because "the ALJ applied a more strict and unsatisfactory scrutiny to Dr. Hochman's opinion and findings, holding that it was not supported by the evidence of record, while giving great weight to reviewing physicians who

14

opined the Plaintiff could perform six hours of standing, walking, and sitting without any interruption." (Plaintiff's Brief ("Pl.'s Br.") at 11.)  For the following reasons, Plaintiff's argument is not well taken.

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted).  If an ALJ decides to give a treating source's opinion less than controlling weight, she must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  See *Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).  This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson,* 378 F.3d at 544 (internal quotation marks omitted).  Where an ALJ fails to explain her reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand.  *Id*.

As an initial matter, Plaintiff does not meaningfully argue that the ALJ failed to provide "good reasons" for assigning less than controlling weight to Dr. Hochman's opinion.  Rather, Plaintiff maintains that the ALJ erred by assigning more weight to the opinions of the state agency physicians than to Dr. Hochman's opinion.  State agency physicians Drs. Klyop and Rosenfeld opined, in relevant part, that Plaintiff could stand and

15

/or walk, with normal breaks, for a total of six hours in an eight-hour workday. (Tr. 86, 122.) The ALJ gave "great weight" to the opinions of the State agency consultants, noting that their opinions were consistent with the evidence of record. (Tr. 18.) Plaintiff maintains that the ALJ should have given Dr. Hochman's opinion more deference than the opinions of the state agency consultants, because Dr. Hochman was a treating physician. As the Commissioner explains in her Brief on the Merits, however, the Social Security Regulations provide that "in appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." S.S.R. 96-6p. Indeed, "[t]he opinion of a medical expert who has not examined the claimant [] is not automatically entitled to less deference than that of a treating physician. . . . [T]he regulations permit an ALJ, under appropriate circumstances, to give great, even dispositive, weight to a medical expert's opinion." Matelski v. Comm'r of Soc. Sec., 149 F.3d 1183, *5 (6th Cir. 1998).

      Here, substantial evidence in the record, discussed in detail by the ALJ, supports the ALJ's decision to assign less than controlling weight to Dr. Hochman's opinion regarding Plaintiff's ability to stand and walk, while assigning great weight to Drs. Klyop and Rosenfeld's opinions that Plaintiff could stand, walk, and sit for six hours total in an eight-hour workday. In determining Plaintiff's physical residual functional capacity (RFC), the ALJ analyzed the relevant medical evidence of record, which included largely normal examination findings and documented treatment success with physical therapy and RFA procedures. (Tr. 16-17.) The ALJ recounted that as of 2011, Plaintiff's treatment for back pain was conservative and consisted of only physical therapy, occupational therapy, acupuncture, and nerve blocks. (Tr. 16, 878.) Examination findings were generally

normal, as Plaintiff could easily rise from her chair; exhibited full strength apart from SI-related pain; had bilaterally negative straight leg raise testing; and had good range of motion and gross lower extremity strength. (Tr. 16, 370-372.) In April 2011, Plaintiff's neurological exam remained normal, including normal senses and motor strength. (Tr. 16, 403.) Plaintiff was able to participate in a work conditioning program and had a lifting tolerance of 22.5 pounds in July 2011. (Tr. 16, 471.) The ALJ noted that Plaintiff underwent a medial branch block in September 2011 and medial branch RFA procedures in August and September 2012. (Tr. 17, 477, 482-487.) Plaintiff's pain gradually improved following the RFA procedures, and by November 2012, her back was symmetric with no abnormal curvature; her strength was intact bilaterally; her sensation was intact; her gait was normal; and she was to be weaned off Percocet. (Tr. 17, 490-491, 493, 867.)

In addition to discussing the medical evidence, the ALJ addressed the opinion evidence as well, and relied, in part, on the opinions of the State agency consultants to determine Plaintiff's RFC. Although Drs. Klyop and Rosefeld did not treat Plaintiff, the ALJ was not prohibited from assigning great weight to their opinions, finding that they were more consistent with the record evidence than Dr. Hochman's opinion. Accordingly and for the foregoing reasons, Plaintiff's first assignment of error is without merit.

> 2. **The ALJ Erred in Failing to Assign Any Weight to the July 2011 Functional Capacity Assessment Completed by Plaintiff's Physical Therapist, Mr. Walsh.**

Plaintiff argues that the ALJ erred in rejecting the functional capacity evaluation results obtained by physical therapist Tim Walsh. Per Dr. Hochman's request, Mr. Walsh conducted a functional capacity evaluation on July 5, 2011. (Tr. 1161-1179.) The ALJ acknowledged the results of Mr. Walsh's functional capacity evaluation in her opinion,

17

noting that it "has been considered in assessing the claimant's residual functional capacity, but this evaluation is based largely on subjective self-report of the claimant and is not totally objective." (Tr. 17.)  Plaintiff maintains that the ALJ erred in her evaluation of Mr. Walsh's opinion, because she failed to apply the appropriate analytical standards for evaluating non-medical source evidence.  Plaintiff's argument is not well taken.

Social Security Ruling 06-3p explains that opinions and other evidence from medical sources who are not "acceptable medical sources," such as physical therapists, are relevant to the ALJ's determination of a claimant's RFC.

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03P, *6 (S.S.A Aug. 9, 2006).  Furthermore, Social Security Ruling 06-3p provides that when evaluating opinion evidence from "other sources" who have seen the individual in their professional capacity, certain factors should be considered,[2] such as:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;

---

[2] Not every factor for weighing evidence will apply in every case.  SSR 06-03P, *5 (S.S.A. Aug. 9, 2006).

> •   How well the source explains the opinion;
> •   Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
> •   Any other factors that tend to support or refute the opinion.

*Id.* at *4-5.

Here, Plaintiff maintains that the ALJ did not follow the requirements of Social Security Ruling 06-3p when assessing Mr. Walsh's opinion. The Court disagrees. As an initial matter, Social Security Ruling 06-3p, by its language, does not *require* the ALJ to specifically address and evaluate Mr. Walsh's opinion in her hearing decision. The language of the ruling is permissive; it states that the case record "should," not "shall," reflect the consideration of opinions from "other sources." Furthermore, because Mr. Walsh is not an "acceptable medical source," the ALJ had no burden to analyze his opinion or provide "good reasons" for rejecting it. Nonetheless, the ALJ, although not required by Ruling 06-3p, specifically addressed Mr. Walsh's July 2011 report in her hearing decision; summarized the report's key findings; expressly stated that she considered the report in assessing Plaintiff's RFC; and noted that she considered the evaluation to be based largely on the subjective reports of Plaintiff, which the ALJ found to be less than fully credible. (Tr. 15, 17.) Indeed, the evaluation report expressly states that Plaintiff demonstrated an "inconsistent reliability of pain and disability reporting as determined by a battery of tests that include: repetitive movement testing, multiple pain questionnaires, and objective/subjective matching." (Tr. 1172.) The ALJ's explanation for rejecting Mr. Walsh's opinion is sufficient, as Mr. Walsh, a physical therapist, was not an acceptable medical source and therefore was not entitled to consideration under the treating physician rule. For the foregoing reasons, Plaintiff's second assignment of error

19

does not present a basis for remand of her case.

## VI.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

                                           s/ *Nancy A. Vecchiarelli*
                                           U.S. Magistrate Judge

Date: July 7, 2015